```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

United States,

                    Plaintiff,           09-CR-86 (CPS)

    - against -                          MEMORANDUM
                                         OPINION
Nelson Heras,                            AND ORDER

                    Defendant.

----------------------------------------X
```
SIFTON, Senior Judge.

On February 19, 2009, defendant Nelson Heras ("Heras") was charged in a five-count indictment along with two co-defendants with participating in a drug importation and distribution scheme. On April 29, 2009, a jury convicted Heras of one count of conspiring with Terry Pannell and Simon Correa, a/k/a "Luichi," to possess with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and 846, and one count of aiding and abetting attempted possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and 846.[1] Now before the court is a motion pursuant to Federal Rule of Criminal Procedure 29(c)[2] by defendant for a

---

[1] Heras was charged with the substantive crime of attempted possession with intent to distribute 500 grams or more of cocaine. The prosecution presented no evidence that Heras himself attempted to possess cocaine. The jury received an instruction on aiding and abetting and convicted defendant on the theory that he aided and abetted Correa. Under 18 U.S.C. § 2, one who aids or abets a crime may be punished as a principal.

[2] The rule states: "If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal."

judgment of acquittal. For the reasons stated below, the motion is granted.

## BACKGROUND

Viewed in the light most favorable to the prosecution,[3] the evidence adduced at trial was as follows:

On January 24, 2009, federal agents stationed at JFK airport searched Terry Pannell ("Pannell"), who had just arrived from Colombia, and found 1,413.5 grams of high purity cocaine secreted in a portfolio and in his briefcase.[4] Transcript of Trial Proceedings at 27-33 ("Tr."). Agents arrested Pannell and he agreed to cooperate with them by making monitored phone calls to his source of supply of drugs in Colombia and to the person in New York who had arranged to pick up the drugs. Tr. 51-52. Pannell gave no indication that he knew defendant Heras, nor did he make any calls to Heras. Tr. 62. Agents proceeded to set up a controlled delivery of the drugs at the Holiday Inn near JFK Airport, and installed Pannell in a hotel room under video surveillance. Tr. 52-53.

At 10:30 p.m. on January 25, 2009, federal agents monitoring

---

[3]*See United States v. Parkes*, 497 F.3d 220, 225 (2d Cir. 2007) (when considering a challenge to the sufficiency of the evidence, a court must "view the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility.")

[4]The cocaine was 77% pure, with a wholesale value of $48,000 and a street value, once it had been diluted with another substance to render it usable, of $170,000. Tr. 41-42.

the parking lot of the hotel noted a minivan entering the lot; the van dropped off a person later identified as Simon Correa ("Correa"). Tr. 72. Correa soon appeared at Pannell's room. Tr. 55. Pannell asked Correa if Correa had the money for the drugs, and Correa said he did not. Transcript of Video Surveillance, Govt. Ex. 18A. Correa indicated that his plan was to take all of the drugs and return with the money the next day, but Pannell insisted that Correa take half the drugs and return with Pannell's payment for all the drugs and pick up the other half. *Id*. Correa agreed, offering to return within an hour with $8,000 in payment for Pannell. *Id*. At that point, federal agents entered the hotel room and arrested Correa, seizing a cell phone and a box cutter hidden in Correa's sleeve. Tr. 59-60. While answering questions about his plan to pick up the drugs, Correa stated that he had first called Jorge Rodriguez ("Rodriguez") for a ride to the hotel but Rodriguez did not have a car, so Correa called Heras, who did. Tr. 62-63.

After receiving word that the person exiting the van in the parking lot had been arrested for attempting to pick up the cocaine, federal agents monitoring the lot surrounded the van, finding Heras in the driver's seat and Rodriguez in the passenger's seat. Tr. 72, 73, 75. The engine and lights of the van were off. Tr. 82. Agents escorted Heras to a secure interview area for questioning. Tr. 74, 82. Rodriguez was also questioned

but was not arrested. Tr. 150.

After Special Agent Robert Etienne ("Agent Etienne") elicited Heras's biographical information, Heras asked what was going on. Tr. 83. Agent Etienne stated that a serious federal crime had been committed involving the importation of narcotics. *Id*. Heras then stated, "Whoa, whoa, whoa, whoa, whoa. Whatever happened up there, that has to do with Simon. That has nothing to do with me."[5] *Id*. Following that statement, Agent Etienne read Heras his *Miranda* rights. Tr. 83. During the questioning that ensued, Special Agent Noah Abott ("Agent Abott") took notes, after which Agent Etienne read Heras the notes and confirmed that they were accurate. Tr. 110. Heras did not read or initial the notes. *Id*.[6]

Agent Etienne first asked Heras what he was doing in the parking lot. Tr. 83-84. Heras stated that he was there to drop off Correa, and that he was waiting in the lot for a call from him to say that he was safe. Tr. 84-85. Heras further stated that he was not going to permit Correa to get back in the car after the hotel visit. Tr. 120. At the start of questioning, Heras stated that Correa was at the hotel to see a girl. Tr. 85. Upon further questioning, Heras stated that he knew that Correa was a

---

[5] Special Agent Noah Abbott testified to a slightly different statement from Heras: "Whoa, whoa... This is... Luichi's deal." Tr. 125.

[6] Agent Etienne testified that the notes reflected summaries of what Heras said in the interview and some statements that were in Heras's own words. Tr. 111.

drug dealer. *Id*. Heras said he had agreed to drive from his home in Manhattan to pick up Correa and Rodriguez and take them to a location along the Van Wyck expressway in Queens.[7] Tr. 113. Rodriguez did not tell him the reason for the trip, but Heras admitted to the agents that he knew or assumed it had to do with drugs, although he did not know what kind, nor did he know who Pannell was. Tr. 113-114, 120, 126. Agent Etienne testified that Heras also admitted that, during the car ride, Correa and Rodriguez had openly discussed Correa's plan to pick up drugs from someone at the hotel. Tr. 86. Heras told agents that in the car, Correa used the phrase "una vaina," a slang term meaning "a thing," to describe what he was going to do. Tr. 144. Heras indicated to the agents that "una vaina" suggested to him that drugs were involved. *Id*.

When asked whether he expected to receive compensation for the ride to the hotel, Heras stated that he was not going to get paid for giving Correa a ride, but rather that he "understood that Luichi was going to take care of him." Tr. 87. When Etienne questioned Heras about the meaning of this statement, Heras replied that he (Heras) was a "small time... marijuana dealer," and that Correa had connected him with sources for marijuana in the past, which Heras hoped he would do again. *Id*.

---

[7]Special Agent Abbott testified that Heras's home in Manhattan was approximately 16 miles away from the Holiday Inn by the most direct route. Tr. 138.

The prosecution presented evidence of phone calls between Pannell and Correa, Correa and Heras, and Correa and Rodriguez, as well as a text message from Correa to Heras. Tr. 132, 134. A summary of the phone records introduced as Government's Exhibit 33 indicates that Correa called Rodriguez at 8:29 p.m. on January 24th, which call lasted three minutes. Ex. 33. At 8:35 p.m. and 8:58 p.m., Correa called Heras, both of which calls lasted 40 seconds. *Id*. At 4:30 p.m. on January 25th, Correa again called Heras, which call lasted 30 seconds, immediately after which Correa called Rodriguez, which call lasted 97 seconds. *Id*. At 5:08 p.m., Correa sent a text message to Heras's phone. *Id*., Tr. 136. The text message read as follows: "Que Honda marqueme es su primo no me abandone," which the parties stipulated had the following English translation: "What's up dial me it's your cousin don't abandon me." Tr. 131. Following several calls to Rodriguez and one call to Pannell, Correa called Heras three more times. Ex. 33. At 9:48 p.m., Correa called Heras, which call lasted 40 seconds, and one minute later, Heras called Correa, which call lasted 35 seconds. *Id*. It is not evident from the records whether there were conversations during the calls, whether there were missed calls, or whether the parties left messages for one another.

At the close of the prosecution's case, Heras moved for a judgment of acquittal on the ground that the prosecution had

failed to introduce sufficient evidence to convict him. I reserved decision on the motion. The defense did not call witnesses. The jury returned a verdict of guilty, after which I instructed the parties to submit briefs on the motion.

**DISCUSSION**

**I. Standard for Reviewing the Sufficiency of the Prosecution's Evidence**

"A defendant bears a heavy burden in seeking to overturn a conviction on grounds that the evidence was insufficient." *United States v. Cruz*, 363 F.3d 187, 197 (2d Cir. 2004). A reviewing court must examine the evidence in the light most favorable to the prosecution and credit every reasonable inference that the jury could have drawn in its favor. *See, e.g.*, *United States v. Walker*, 191 F.3d 326, 333 (2d Cir. 1999). "The relevant question in this inquiry is whether, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Rodriguez*, 392 F.3d 539, 544 (2d Cir. 2004) (internal quotation marks omitted). Direct evidence is not required; in fact, the prosecution is entitled to prove its case solely through circumstantial evidence; however, "it is not enough that the inferences in the government's favor are permissible." *United States v. Martinez*, 54 F.3d 1040, 1043

(2d Cir. 1995). A court must also be satisfied that "the inferences are sufficiently supported to permit a rational juror to find that the element, like all elements, is established beyond a reasonable doubt." *United States v. Friedman*, 300 F.3d 111, 124 (2d Cir. 2002). A court must look at "the evidence in its totality," and the prosecution "need not negate every theory of innocence." *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000).

A court must "defer to a jury's assessments with respect to credibility, conflicting testimony, and the jury's choice of the competing inferences that can be drawn from the evidence." *United States v. Jones*, 393 F.3d 107, 111 (2d Cir. 2004) (internal quotation marks and citation omitted). However, "specious inferences are not indulged because it would not satisfy the Constitution to have a jury determine that the defendant is *probably* guilty." *United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008) (citation, brackets, and internal quotation marks omitted). "[I]f the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." *United States v. Cassese*, 428 F.3d 92, 99 (2d Cir. 2005) (quotation marks omitted).

## II. Standards for Sufficiency of Evidence of Conspiracy and Aiding and Abetting

The jury found Heras guilty of conspiracy to possess with the intent to distribute 500 grams or more of cocaine and aiding and abetting attempted possession with intent to distribute 500 grams or more of cocaine.[8]

In order to convict a defendant of conspiracy, the government must prove that he "knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it," *Rodriguez*, 392 F.3d at 545 (internal quotations omitted), "with the specific intent to commit the offenses that were the objects of the conspiracy." *United States v. Monaco*, 194 F. 3d 381, 386 (2d Cir. 1999). To knowingly participate in a conspiracy, a defendant must "agree[] on the essential nature of the plan," and not "merely [agree] to do something wrong." *Lorenzo*, 534 F.3d at 159. Nevertheless, "the government need not prove that the defendant knew the details of the conspiratorial scheme or the identities of all of the conspirators." *Hawkins*, 547 F.3d 66, 71 (2d Cir. 2008). "[T]o

---

[8] These offenses are in violation of 21 U.S.C. § 841(a)(1), which provides, in pertinent part: [I]t shall be unlawful for any person knowingly or intentionally... to... distribute... or possess with intent to... distribute... a controlled substance," and 21 U.S.C. § 846, which provides, in pertinent part, "Any person who attempts or conspires to commit any offense defined in this title shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." The jury was also instructed on the law of aiding and abetting pursuant to 18 U.S.C. § 2, under which one who aids and abets a crime may be punished as a principal.

establish the intent, the evidence of knowledge must be clear, not equivocal." *United States v. Ceballos*, 340 F.3d 115, 124 (2d Cir. 2003).

"A conspiracy by its very nature is a secretive operation, and the existence of and participation in a conspiracy may be established through circumstantial evidence." *United States v. Gaviria*, 740 F.2d 174, 183 (2d Cir. 1984) (internal citations and quotation marks omitted). However, "[a]n individual defendant's membership in a conspiracy may not be established simply by his presence at the scene of a crime, nor by the fact he knows that a crime is being committed." *United States v. Desimone*, 119 F.3d 217, 223 (2d Cir. 1997); *Rodriguez*, 392 F.3d at 545. Nor is a defendant's "mere association with those implicated in an unlawful undertaking [sufficient] to prove knowing involvement." *United States v. Nusraty*, 867 F.2d 759, 764 (2d Cir. 1989).

"It is axiomatic that more is required than mere knowledge of the purpose of a conspiracy." *Hawkins*, 547 F.3d at 74. The defendant's "attitude towards the forbidden undertaking must be more positive... he must in some sense promote [the] venture himself, make it his own, have a stake in its outcome, or make an affirmative attempt to further its purposes," in a manner indicating "informed and interested cooperation." *Ceballos*, 340 F.3d at 124 (internal citation and quotation marks omitted). The prosecution must prove beyond a reasonable doubt that the

defendant joined the conspiracy "with the affirmative intent to make the conspiracy succeed." *Id*. at 123-24.

Liability based on aiding and abetting, like conspiracy, requires more than knowledge of the crime; the prosecution must prove beyond a reasonable doubt that the defendant had the specific intent to contribute to the success of the underlying crime. *See United States v. Reifler*, 446 F.3d 65, 96 (2d Cir. 2006). To establish that a defendant acted with the requisite intent, "the prosecution must prove the defendant knew of the proposed crime - suspicion that it might occur is not enough," *United States v. Pipola*, 83 F.3d 556, 562 (2d Cir. 1996), and that "the defendant acted... with the specific purpose of bringing about the underlying crime," *United States v. Cruz*, 363 F.3d 187, 198 (2d Cir. 2004) (quoting *United States v. Labat*, 905 F.2d 18, 23 (2d Cir. 1990)), with "an interest in furthering it." *Pipola*, 83 F.3d at 562.

**III. Analysis**

Both crimes of which Heras was convicted require proof that the defendant had the specific intent to distribute cocaine. Reading the evidence in the light most favorable to he prosecution, there was proof that Heras learned during the car ride that Correa was going to a place to pick up drugs. However, there was no evidence that Heras knew of Correa's plan for what

to do with the drugs after acquiring them or that Heras intended to further that part of the criminal venture. To convict a defendant of these specific intent crimes "'requires proof that the purpose – not merely the effect'" - of the defendant's participation in the crime was to distribute narcotics. *United States v. Ness*, 2009 U.S. App. LEXIS 9947, at *7 (2d Cir. May 8, 2009).

In its closing argument, the prosecution relied on the following evidence to establish Heras's guilt: (1) Heras's statements' to federal officers; (2) the fact that Heras knew Correa was a drug dealer; (3) the phone records showing that Correa called Heras several times and sent one text message to him; and (4) the fact that Correa said to Pannell that he could return in an hour with $8000 in exchange for the rest of the drugs. As detailed below, this evidence did not establish that Heras intended to distribute drugs or aid another in doing so.[9]

---

[9] Indeed, the prosecution made little attempt to argue that the evidence established the element of intent, focusing instead on the issue of knowledge. In closing, the prosecution twice cited defendant's statements to federal officers, in which defendant stated that he knew that Correa's plan was to pick up drugs. Tr. 187, 189. The prosecution cited defendant's "Whoa, whoa" statement, and pointed out that defendant had not disavowed knowledge, but had simply stated that it was Correa's deal. Tr. 190. The prosecution argued that the calls from Correa's phone to Heras's phone and the text message indicated that Heras knew what was going on. Tr. 190. Finally, the prosecution argued, "why would the defendant agree to give a ride to Simon Correa, a person he knew was a drug dealer who had hooked him up with drug connects in the past, if he didn't know what was going on...?" Tr. 192. Regarding intent, the prosecution stated that the number of calls indicated that "Correa wasn't just asking for a ride," and then argued that Correa's promise to Pannell to return to the hotel in an hour meant that Heras was a willing participant in the criminal venture, since otherwise Correa would not have been able to promise a speedy return. However, the video of the exchange between Correa and Pannell showed that the original plan was for Correa to return the next day with the money, contravening the government's theory.

No evidence admitted at trial established that Correa had not only formulated a plan about what to do with the drugs once he had them in his possession but had also communicated that plan to Heras and sought his assistance.

*1. Heras's Statements to Federal Agents*

Heras's statements to federal agents constituted the only direct evidence relied upon by the prosecution in its case against Heras. Tr. 188. In these statements, Heras said that Correa and Rodriguez openly discussed picking up narcotics on the way to the hotel, that he knew what they were doing was illegal, and that he assumed that Correa was going to 'take care of him' by giving him contact information about marijuana sources.[10]

Heras's statements contained no indication that Heras was aware of a plan to distribute the drugs or intended that the drugs, once acquired, be distributed. Nothing in the statements shows that Heras "agreed on the essential nature of the plan," *Lorenzo*, 534 F.3d at 159, "knowingly joined and participated in it," *Rodriguez*, 392 F.3d at 545, or "promote[d] [the] venture himself," *Ceballos*, 340 F.3d at 124, as is necessary to establish the intent element of conspiracy. Nor do Heras's statements indicate that he drove Correa to the hotel "with the specific purpose of bringing about the underlying crime." *Cruz*, 363 F.3d

---

[10] Such a vague hope of further goodwill hardly qualifies as a "stake in the venture." *Ceballos*, 340 F.3d at 124.

at 198. At most, these statements indicate that Heras knew that Correa was on his way to take possession of drugs, not that Correa had sought Heras's assistance in thereafter distributing them.

*2. Knowledge that Correa was a Drug Dealer*

The prosecution suggested that the jury could infer the fact that Heras knew of the criminal plan and intended to help it succeed from the fact that he drove a known drug dealer to a location where the drug dealer planned to pick up drugs. In substance, the prosecution asked the jury to presume that Heras intended to bring about the ordinary consequences of his actions. When a drug trafficker acquires drugs it may be presumed that the trafficker will distribute them. While a jury is generally permitted to draw the inference that a defendant intended the ordinary consequences of his actions, *United States v. Russo*, 302 F.3d 37, 47 (2d Cir. 2002), Heras offered an "innocent" explanation when he stated, after asking what was going on and being told about the conspiracy to import large amounts of cocaine, "Whoa, whoa... Whatever happened up there, that has to do with Simon. That has nothing to do with me," and "This is... Luichi's deal."[11]

---

[11]Given that Heras admitted that he knew he was driving Correa to pick up drugs, the only reasonable interpretation of Heras' statement is that, while he knew that Correa was about to acquire drugs, he had no idea where they came from or what Correa intended to do with them – an expression of

Once this evidence was introduced, the jury could no longer rely on a presumption concerning Heras's intent; some evidence was required to show that Heras did, in fact, intend for Correa to distribute the drugs. *See United States v. Nelson*, 277 F.3d 164, 197 n.37, n.40 (2d Cir. 2002) ("where a jury infers intent by deciding that a given defendant meant to bring about the consequences of his actions, that defendant [may, by] pointing to countervailing evidence that the jury ignored[,] unseat this finding by challenging the sufficiency of the evidence"); *see also United States v. Law*, 528 F.3d 888, 896 (D.C. Cir. 2008) ("When faced with an innocent explanation sufficiently supported by the evidence to create a reasonable doubt about the defendant's guilt, the Government's burden is to present evidence sufficient to dispel that doubt."). While the evidence showed that Heras knew that Correa was going to take possession of drugs, it did not support the inference that Heras knew what Correa was going to do with the drugs once he had them in his possession, nor that Heras intended to further that part of Correa's criminal venture.

*3. Phone Records*

The prosecution pointed to the eight phone calls from Correa's phone to Heras's phone as evidence that Correa and Heras

---

innocence of the crime of which Heras was accused.

were discussing the narcotics transaction on the day before and day of the meeting with Pannell, indicating that Heras knew of the ultimate purpose of the criminal venture and conspiracy before the car ride to the hotel. Drawing all inferences in the prosecution's favor, it is possible to say that Heras and Correa spoke several times on the day before and the day of the transaction and discussed Correa's need for a ride.[12] "Critically absent however, is any evidence of the precise contents of the conversations." *Rodriguez*, 392 F.3d at 547-48. The call log offers no support to the claim that Heras intended that drugs be not only acquired, but also distributed.

The prosecution additionally emphasized the text message from Correa to Heras, which stated "dial me... don't abandon me," as evidence that Heras must have known drug distribution was taking place and had chosen to participate in it. Nothing in the content or context of this message indicates that Heras knew about and was participating in a drug distribution conspiracy.

*4. The Elements of Conspiracy and Aiding and Abetting were not established*

Even viewing all of the evidence together in the light most favorable to the prosecution, "the most this evidence established

---

[12]The defense argued at trial that the calls on January 24th, being of even lengths such as 40 seconds, were missed calls that went to voicemail, and thus defendant and Correa spoke only on the day of the trip to the hotel, not the day before.

was that [Heras] was aware of the conspiracy and associated with some of its members. By no means, however, was it sufficient to show that [he] was a knowing [and intentional] participant in it." *United States v. Young*, 745 F.2d 733, 764 (2d Cir. 1984). Accordingly, there was insufficient evidence to convict Heras of conspiracy. Furthermore, lacking sufficient evidence of defendant's intent to further the distribution of narcotics, the government also failed to establish the elements of the aiding and abetting charge beyond a reasonable doubt.

**CONCLUSION**

For the reasons stated herein, defendant's motion for a judgment of acquittal is granted. The Clerk is directed to enter a judgment of acquittal in defendant's favor.

SO ORDERED.

Dated:   Brooklyn, New York
         June 29, 2009

                    By: /s/ Charles P. Sifton (electronically signed)
                            United States District Judge